NO. 4-06-0250     Filed: 9/19/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: ELIZABETH McN., a Person Found | ) | Appeal from |
| Subject to Involuntary Admission, | ) | Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Sangamon County |
| Petitioner-Appellee, | ) | No. 06MH139 |
| v. | ) | |
| ELIZABETH McN., | ) | Honorable |
| Respondent-Appellant. | ) | George H. Ray, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE TURNER delivered the opinion of the court:

In February 2006, a petition was filed for the emergency involuntary admission of respondent, Elizabeth McN., alleging she had a mental illness and was reasonably expected to inflict harm upon herself or others.  The trial court conducted a hearing and granted the petition.

On appeal, respondent argues (1) her procedural due-process rights were violated and (2) the State failed to set forth clear and convincing evidence warranting involuntary admission.  We reverse.

I. BACKGROUND

In February 2006, Tiffany Price filed a petition for emergency involuntary admission as to respondent pursuant to section 3-600 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-600 (West 2004)).  The petition alleged respondent was mentally ill, reasonably expected to inflict serious physical harm upon herself or another in the near future,

and in need of immediate hospitalization for the prevention of such harm.

In March 2006, the trial court conducted a hearing on the petition. Dr. Narasimhulu Sarma testified he has worked as a psychiatrist for 35 years. He stated respondent came under his care on February 28, 2006, and he had examined her about four times since then at Memorial Medical Center. Although Dr. Sarma found respondent "very healthy" physically, he found she lacks insight and has "grandiose ideas about herself." Dr. Sarma stated respondent suffered from chronic bipolar illness. When asked his opinion based on a reasonable degree of psychiatric certainty whether respondent's mental illness would cause her to inflict serious harm upon herself or another, Dr. Sarma stated:

> "Not upon herself. She doesn't--you know--
> she might become irritable sometimes if peo-
> ple don't listen to her. Other people may
> become very upset with her and they may harm
> her."

Thus, Dr. Sarma believed respondent would be in danger of being harmed by others if she was discharged. The treatment plan entered into evidence was the least-restrictive alternative. Dr. Sarma opined that respondent would benefit from a stay in a state institution. If she started undergoing treatment, he believed she could be discharged in three or four weeks.

On cross-examination, Dr. Sarma testified respondent had participated in group and recreational therapy but did not

take her psychotropic medications.  Respondent had been "very pleasant" to Dr. Sarma and not threatening.  On redirect examination, Dr. Sarma stated he did not think the homeless shelter would take respondent back if she was discharged because she had "created a problem for them."

Respondent testified she had no intent to harm herself or anyone else.  She had arrived in Springfield about eight weeks earlier and found a part-time job.  A dispute occurred at the homeless shelter where she stayed, but she did not threaten anyone.  If discharged, she would stay at a hotel or the Salvation Army before taking a train to Chicago.

The trial court found respondent suffered from a mental illness and, based on Dr. Sarma's opinion, she "could be subject to harm from others" if not treated for her illness.  The court ordered respondent hospitalized at McFarland Mental Health Center for 90 days.  This appeal followed.

## II. ANALYSIS

Along with her procedural due-process argument, respondent contends the State failed to set forth clear and convincing evidence warranting her involuntary admission.  We agree, and the State concedes.

Initially, we note this case is moot.  Section 3-813(a) of the Code (405 ILCS 5/3-813(a) (West 2004)) provides that an initial order for hospitalization shall not exceed 90 days.  Here, the trial court's order granting the petition for involuntary admission was entered on March 10, 2006.  Since the 90

days have passed and the court's order no longer has any force or effect, it is impossible for this court to grant any effectual relief to any party.  However, as this type of case meets the public-interest exception of the mootness doctrine, we find review appropriate.  See In re Louis S., 361 Ill. App. 3d 774, 777, 838 N.E.2d 226, 230 (2005); see also In re Katz, 267 Ill. App. 3d 692, 694, 642 N.E.2d 893, 895 (1994) (reviewing merits of discharge petition even though the respondent had been discharged prior to appeal).

A trial court's decision on involuntary admission is given great deference on appeal and will not be overturned unless it is against the manifest weight of the evidence.  In re Nancy A., 344 Ill. App. 3d 540, 554, 801 N.E.2d 565, 579 (2003).  A judgment will be considered against the manifest weight of the evidence "only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence."  In re John R., 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

According to section 1-119(1) of the Code, a person subject to involuntary admission includes:

> "A person with mental illness and who
> because of his or her illness is reasonably
> expected to inflict serious physical harm
> upon himself or herself or another in the
> near future which may include threatening
> behavior or conduct that places another indi-

vidual in reasonable expectation of being harmed." 405 ILCS 5/1-119(1) (West 2004). To involuntarily commit a person to a mental-health facility,

> "the State must prove by clear and convincing evidence that a person is mentally ill and that, as a result of this illness, he is reasonably expected to inflict serious physical harm upon himself or another in the near future, or is unable to protect himself from serious harm. [Citations.] Proof of mental illness alone is not sufficient to support involuntary admission." Nancy A., 344 Ill. App. 3d at 555, 801 N.E.2d at 579-80.

In the case sub judice, Dr. Sarma testified respondent suffered from a mental illness. However, Dr. Sarma was not of the opinion she would harm herself. Although she might become irritable, Dr. Sarma believed other people might become upset with her and may harm her. However, the State presented no evidence that respondent had been victimized. "Such weakness [as a member of society] does not warrant preemptive confinement whereby potential victims would be incarcerated in the interest of preventing criminals from preying upon them." In re Jakush, 311 Ill. App. 3d 940, 946, 725 N.E.2d 785, 790 (2000). Although respondent's behaviors might be deemed "nonacceptable by society," the State failed to set forth clear and convincing evidence that respondent was reasonably expected to inflict serious harm

upon herself or another in the near future or engage in conduct that placed another person in reasonable anticipation of being harmed.  Mere speculation that others might harm respondent fails to satisfy the State's burden for involuntary admission.  Thus, the trial court erred in granting the petition for involuntary admission.

III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

McCULLOUGH and KNECHT, JJ., concur.